UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY PAGAN,

                Plaintiff,

                -against-

HON. JUDGE TIMOTHY McCARTHY; ADA
LORIANN FARRINGTON; CT CLERK: JANE
DOE; ASST ATTORNEY GENERAL LAURA
NG; WILLIAM J. DOWLING; JUAN SAND
PEDRO; DANNY MENTZER; OMH:
OFFICER OF CONSUMER AFFAIRS;
RIKERS ISLAND FACILITY; DIVISION OF
CIRMINAL JUSTICE SERVICES; NEWS
MEDIA: CH 12; BELLEVUE PSYCH
HOSPITAL; DOCTOR C. ORDLANDO,

                Defendants.

1:24-CV-8893 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Jerry Pagan is currently institutionalized in the Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson"), located in New Hampton, New York. He seems to indicate, in his complaint, that he was placed into the custody of the Commissioner of the New York State Office of Mental Health ("OMH") following a state court's adjudication that he was not responsible for a criminal offense by reason of mental disease or defect, under Section 330.20 of the New York Criminal Procedure Law ("Section 330.20"). He brings this action *pro se*, invoking the court's federal question jurisdiction, and seemingly alleging that the defendants violated his federal constitutional rights and injured him under state law. Plaintiff seeks damages and may also be seeking his release from custody. Plaintiff sues: (1) Judge Timothy McCarthy,

who Plaintiff alleges is a "Bronx County Court Judge";[1] (2) Bronx County Assistant District Attorney Lorrian Farrington; (3) Laura Ng, who Plaintiff describes as both an "Assistant Attorney General" and as an Administrative Assistant in the Attorney General's Office;[2] (4) an unidentified "Jane Doe" Court Clerk of the New York Supreme Court, Bronx County; (5) William J. Dowling, Esq.; (6) Juan San Pedro, Esq.; (7) Danny Mentzer, Esq.;[3] (8) the OMH's Office of Consumer Affairs ("OMHOCA"); (9) "Rikers Island Correctional Facility (AMKC) (GRVC)";[4] (10) the New York State Division of Criminal Justice Services ("NYSDCJS"); (11) "News Media; Ch. 12"[5]; (12) "Bellevue Psych Hospital" ("Bellevue")[6]; and (13) "Doctor C. Orlando."[7]

The Court construes Plaintiff's complaint as asserting damages claims for federal constitutional violations under 42 U.S.C. § 1983, as well as damages claims under state law. In addition, to the extent that Plaintiff challenges the basis for his current custody, the Court construes such claims as seeking a writ of *habeas corpus* under 28 U.S.C. § 2254.

---

[1] Plaintiff's references to the "Bronx County Court" appear to be to the New York Supreme Court, Bronx County.

[2] Plaintiff's references to the "Attorney General" and to the "Attorney General's Office" appear to be to the Attorney General of the State of New York and to that Attorney General's Office.

[3] Plaintiff seems to indicate that Dowling, San Pedro, and Mentzer are his former criminal defense attorneys.

[4] Plaintiff's reference to the "AMKC" and "GRVC" appear to be to the Anna M. Kross Center and the George R. Vierno Center, which are both New York City Department of Correction jails located on Rikers Island.

[5] "News Media; Ch. 12" appears to be a reference to a private media organization known as News 12 New York.

[6] "Bellevue" seems to be NYC Health+Hospitals/Bellevue, a public hospital located in New York, New York.

[7] Plaintiff seems to refer here to Dr. Kirstin Orlando, the Director of Mid-Hudson.

By Order dated December 15, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After

separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following: On an unspecified date and location, Plaintiff confessed to "being raped by Richard Reed and another person."[8] (ECF 1, at 7.) Plaintiff had been drugged by Richard Reed; when Plaintiff woke from being drugged, he defended himself because he "was under attack in [Reed's] apartment." (*Id.*) Plaintiff "told [his] story to the interviewers" but he "left out parts about the case because [Plaintiff] noticed . . . [there] was a camera in the building." (*Id.*)

Plaintiff "told the story to the lawyers . . . , when the first part of the arraignment happened[,] to go to the grand jury and explained [that,] due to the fact that they tampered with evidence[,] . . . [Plaintiff] did not want to say . . . there is a camera in the building." (*Id.*) Plaintiff's defense counsel informed him that because Reed "let [him into his apartment], it ain't burglary. The [burglary] charge got dropped." (*Id.* at 7-8.) Plaintiff was falsely accused of being Reed's lover when Plaintiff is actually a prostitute. (*Id.* at 8.) Plaintiff was also falsely accused of handling a knife when he actually handled scissors. (*Id.*) Plaintiff states that he, not Reed, was a victim of a crime, because Reed provoked and attacked him, leaving him "no choice." (*Id.* at 8-9.) Plaintiff also states that the other unidentified person ran out of the apartment. (*Id.* at 8.)

---

[8] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise. Plaintiff's allegations appear to arise from the events which led to his criminal prosecution, and that resulted in his being adjudicated not responsible for a criminal offense by reason of mental disease or defect, under Section 330.20.

Plaintiff was held in Bellevue for over 5 years while being prosecuted[9]; "[t]hey used mental health to lie about the verdict." (*Id.* at 9.) His lawyers "prevented [him] from going to the grand jury and discussing" with the grand jury "all [of the] proof that [he has] told about the case of truth." (*Id.*) There was "corruption from the attorneys avoiding . . . what should have been brought forth in the courts." (*Id.*)

Plaintiff states that, on September 12, 2022, Judge McCarthy, Assistant District Attorney Farrington, and the "Jane Doe" Court Clerk "insisted that [the events for which Plaintiff was prosecuted] happened [on] December 4, 2016," but Plaintiff told them that they had occurred on December 4, 2015. (*Id.*) Plaintiff, while being prosecuted, underwent multiple psychiatric evaluations pursuant to Section 730.50 of the New York Criminal Procedure Law. (*See id.*) Plaintiff informed his attorneys that he was not seeking to be adjudicated not responsible for a criminal offense by reason of mental disease or defect, under Section 330.20. (*Id.*)

Plaintiff has concluded that his criminal proceedings were corrupt because "they know other people came" to Reed's apartment but the authorities "failed to investigate." (*Id.* at 10.) Though Plaintiff was interviewed by "several people about this case . . . they refused to allow [his] story to be heard before the media." (*Id.*) "That's why the lawyers and D.A.'s and Judges refused to allow the press to display what happened to go before the media." (*Id.*) There was "new information that was told to the interviewers about others that came" into Reed's apartment. (*Id.* at 11.) Yet, the authorities "refused to recover and investigate the evidence that [Plaintiff has] been explaining for a while since . . . when [Plaintiff] got denied the grand jury." (*Id.* at 10.) "The records . . . have gotten avoided. The evidence got prevented . . . [from] be[ing]

---

[9] Plaintiff alleges that he was first sent "to Rikers Island Correctional Facility and straight to Bellevue for over 5 years and interviewed by several people about the case," including his defense attorneys, Dowling, San Pedro, and Mentzer. (ECF 1, at 9.)

shown." (*Id.*) Plaintiff's "story about what happened to [him] has [not] been . . . mentioned in court during the evaluation[,] which has not been by doctors to prove about the insanity plea['s] purpose." (*Id.*)

Plaintiff states that he has "not been before a trial" and that he does not "understand why . . . Judge Timothy McCarthy did not allow [him] to go to trial, which [his] lawyer . . . Mentzer said for what [he] told him." (*Id.* at 11.) Plaintiff asserts that his contention—that others were present in the apartment at the time of the alleged events—was not presented in court and that, therefore, that contention was hidden evidence. (*Id.*) He also states that "Reed was given an opportunity to pay for . . . sex. . . . [Plaintiff] knew he had the money. He sedated [Plaintiff] along with another person that was there." (*Id.*) Plaintiff, however, "said on tape on purpose that ain't nobody else did it but [him]." (*Id.*) Plaintiff had given "a hint. They failed to investigate Chance Medley." (*Id.*)

During Plaintiff's criminal proceedings, one of Plaintiff's lawyers "offered him a [Section] 330.20 plea." (*Id.* at 12.) Plaintiff then answered the questions of Judge McCarthy, Assistant District Attorney Farrington, and the "Jane Doe" Court Clerk, but they "were not all about the confession." (*Id.*) When Plaintiff was transferred to Mid-Hudson, apparently after his criminal proceedings had concluded,[10] he "told the interviewers [that] other people were in the apartment with [him,]" but "[t]hey failed to investigate." (*Id.*)

During his criminal proceedings, one of Plaintiff's lawyers "told the court that [Plaintiff] wanted to go to trial. The Judge said no! They said [Plaintiff is] schizophrenic. That is why [he]

---

[10] Plaintiff asserts that "[d]octors did not come to court to testify, on [his] behalf[,] of getting accepted for a Section 330.20" adjudication. (ECF 1, at 12.)

got a [Section] 330.20" adjudication. (*Id.*) "That is not a good enough reason to give [Plaintiff] a [Section] 330.20" adjudication. (*Id.*) Plaintiff asserts that he is "not mentally ill!" (*Id.*)

Plaintiff also states that the OMH is holding him in its custody, but he does not want to be in its custody. (*Id.*)

## DISCUSSION

### A.    OMHOCA and NYSDCJS

The Court must dismiss Plaintiff's damages claims under 42 U.S.C. § 1983 and under state law against the OMHOCA and the NYSDCJS, which are both agencies of the State of New York, under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States and their agencies from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Thus, the OMH and the NYSDCJS enjoy Eleventh Amendment immunity. *See Iwelu v. New York State Office of Mental Health*, No. 22-3096-cv, 2024 WL 2175938, at *2 (2d Cir. May 15, 2025) (summary order) (OMH); *Pearson v. Aroyola*, 1:24-CV-8693 (KMW), 2025 WL 2420298, at *3 (S.D.N.Y. Aug. 18, 2025) (DCJS); *Campbell v. Office of Mental Health*, 1:24-CV-0784 (LTS), 2024 WL 2784331, at *4 (S.D.N.Y. May 29, 2024) (OMH); *Abascal v. Bellamy*, No. 1:10-CV-1406 (LTS) (AJP), 2011 WL 2436931, at *2 (S.D.N.Y. June 8, 2011) (DCJS).

The doctrine of Eleventh Amendment immunity also precludes a plaintiff from seeking, in federal court, relief under state law against a State or one of its agencies. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002); *Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." (internal quotation marks and citation omitted)).

Congress has not abrogated the States' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Thus, the Court dismisses Plaintiff's claims under Section 1983 against the OMHOCA and the NYSDCJS because Plaintiff appears to seek monetary relief from these defendants that are immune from such relief, and also for lack of jurisdiction. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3*); see Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction"); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction"; holding that, under the Eleventh Amendment, the court lacked jurisdiction over the plaintiff's claims against a state agency). In addition, and for the same reasons, the Court dismisses any claims under state law that Plaintiff asserts against these defendants. *See* § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3). Such claims may only be pursued in the appropriate state courts. *See Bertoldi v. State*, 275 A.D. 2d 227, 228 (1st Dep't 2000) ("It is well settled that the [New York] Court of Claims has exclusive jurisdiction over actions for

8

money damages against the State [of New York], [New York] State agencies, or [New York] State officials acting in their official capacities in the exercise of governmental functions.").

## B.      "Rikers Island Correctional Facility (AKMC) (GRVC)" and Bellevue

The Court must dismiss Plaintiff's claims under Section 1983 against "Rikers Island Correctional Facility (AKMC) (GRVC)," which the Court understand to be references to the Anna M. Kross Center ("AMKC") and the George R. Vierno Center ("GRVC"), both jails on Rikers Island, as well as his claims under Section 1983 against Bellevue, a public hospital. To state a claim under this statute, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a " state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Neither the AMKC, the GRVC, nor Bellevue, two jails and a public hospital, is a person for the purpose of Section 1983. *See Banks v. Bellevue Hosp.*, 1:24-CV-0369 (LTS), 2024 WL 3676930, at *6 (S.D.N.Y. Aug. 6, 2024) (Bellevue), *appeal dismissed*, No. 24-2452, 2025 WL 2714222 (2d Cir. Mar. 20, 2025); *Griffith v. Harvey*, No. 1:24-CV-2714 (ALC), 2024 WL 2158594, at *1 (S.D.N.Y. May 14, 2024) (GRVC); *Griffith v. AMKC Rikers Island*, No. 1:23-CV-0386 (LLS), 2021 WL 848103, at *2 (S.D.N.Y. Mar. 4, 2021) (AMKC). The Court therefore dismisses Plaintiff's claims under Section 1983 against what the Court construes as the AMKC and the GRVC, as well as Bellevue, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.      Judge McCarthy and the "Jane Doe" Court Clerk

The Court understands Plaintiff's complaint as asserting damages claims under Section 1983 against both Judge McCarthy and the "Jane Doe" Court Clerk in their individual capacities, arising from Judge McCarthy's decisions and actions while presiding over Plaintiff's state court criminal proceedings and the "Jane Doe" Court Clerk's actions in assisting Judge McCarthy

during those proceedings. The Court must dismiss these claims under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9-12 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken in absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). "[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Courts have extended this immunity from damages to "others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), when they are performing discretionary acts of a judicial nature that are essential to the judicial process, *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988). For example, this immunity has been extended to administrative court clerks when performing discretionary acts of a judicial nature that are essential to the judicial process. *Rodriguez*, 116 F.3d at 66-67; *Oliva*, 839 F.2d at 39-40; *see Irazu v. Sainz De Aja*, No. 23-702-cv, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023) (summary order); *Sibley v. Geraci*, 858 F. App'x 415, 417 (2d Cir. 2021) (summary order); *Treistman v. McGinty*, 804 F. App'x 98,

10

100 (2d Cir. 2020) (summary order); *Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order).

Plaintiff appears to assert claims under Section 1983 for damages against Judge McCarthy arising from his decisions and actions taken while presiding over Plaintiff's state court criminal proceedings, and such claims against the "Jane Doe" Court Clerk arising from her actions in assisting Judge McCarthy during those criminal proceedings. Plaintiff, however, fails to allege any facts showing that, with respect to Judge McCarthy's abovementioned decisions and actions and the "Jane Doe" Court Clerk's abovementioned actions, either of these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Judge McCarthy, for "acts arising out of, or related to, [an] individual case[] before" him, *Bliven*, 579 F.3d at 210, and because he sues the "Jane Doe" Court Clerk arising from her discretionary acts of a judicial nature that were essential to the judicial process, the doctrine of judicial immunity applies to any claims under Section 1983 for damages against these defendants in their individual capacities. The Court therefore dismisses these claims under the doctrine of judicial immunity, and consequently, because Plaintiff seeks monetary relief from these defendants who are immune from such relief, *see* § 1915(e)(2)(B)(iii), and as frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

D.     **Assistant District Attorney Farrington**

The Court understands that Plaintiff is asserting damages claims under Section 1983 against Assistant District Attorney Farrington in her individual capacity arising from her criminal prosecution of Plaintiff. The Court must dismiss these claims under the doctrine of prosecutorial immunity. Under this doctrine, prosecutors are immune from civil suits for damages for acts

11

committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). This immunity applies to, among other prosecutorial actions, the decision of whether to prosecute someone. *See Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (among the prosecutorial actions protected from damages liability by the doctrine of prosecutorial immunity are "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas"). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that Assistant District Attorneys' direction as to where a criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and prosecutors were therefore shielded by absolute immunity (citing, *inter alia, Goldstein*)).

Here, Plaintiff's claims under Section 1983 against Farrington are based on her actions that were within the scope of her official duties as a prosecutor and were associated with the conduct of a trial. The Court therefore dismisses Plaintiff's claims under Sections 1983 for damages against Farrington, under the doctrine of prosecutorial immunity, because, in raising these claims, Plaintiff is seeking monetary relief from a defendant who is immune from such

12

relief, *see* § 1915(e)(2)(B)(iii), and because such claims are frivolous, *see* § 1915(e)(2)(B)(i);

*Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (holding, for the purposes of the IFP

statute, that a claim dismissed under the doctrine of prosecutorial immunity is deemed frivolous).

**E.      Dowling, San Pedro, Mentzer, and "News Media: Ch 12"**

The Court must dismiss Plaintiff's claims under Section 1983 against attorneys Dowling,

San Pedro, and Mentzer, who the Court understands to be Plaintiff's former public defenders or

privately retained criminal defense attorneys, as well as against "News Media: Ch 12," which the

Court understands to be a private media organization. A claim for relief under Section 1983 must

allege facts showing that the defendants acted under color of a state "statute, ordinance,

regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a

plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States

was violated, and (2) the right was violated by a person acting under color of state law, or a

"state actor." *West*, 487 U.S. at 48-49; *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d

Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . .  the exercise

of some right or privilege created by the State . . . *and* the involvement of a person who may

fairly be said to be a state actor." (internal quotation marks and citation omitted)). Private

individuals and other private entities are not generally considered to be state actors. *Sykes v.*

*Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary*

*Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d

307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not

private parties. . . ." (internal quotation marks and citations omitted)).

Absent special circumstances suggesting concerted action between an attorney and a state

representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's or

a private legal aid organization's legal representation does not constitute state action for the

purpose of stating a claim under Section 1983 against that attorney or organization, regardless of whether that attorney or organization is privately retained, court-appointed, or a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing and quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981), and *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."). The same is true with respect to private media organizations. *See JGG v. Gumora*, No. 1:22-CV-7659 (LTS), 2022 WL 15523513, at *6 (S.D.N.Y. Oct. 24, 2022); *Heyliger v. City of Binghampton Police Dep't*, No. 3:11-CV-1293 (NAM) (DEP), 2016 WL 1048999, at *7 (N.D.N.Y. Mar. 11, 2016), *aff'd*, 771 F. App'x 96 (2d Cir. 2019) (summary order); *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 195-97 (E.D.N.Y. 2010).

Plaintiff has alleged no facts showing how Dowling, San Pedro, and Mentzer—his former defense attorneys— and "News Media: Ch 12"— a private media organization—acted as state actors when they allegedly violated Plaintiff's federally protected rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against these defendants for failure to state a claim upon which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**F.    Ng and Dr. Orlando**

The Court further understands Plaintiff's complaint as asserting damages claims under Section 1983 against Ng (an employee of the New York State Attorney General's Office) and Dr. Orlando (the Director of Mid-Hudson); the Court must, however, dismiss these claims as well. To state a claim under Section 1983, a plaintiff must allege facts showing an individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y.*

*State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how either Ng or Dr. Orlando was directly and personally involved in any of the alleged violations of his constitutional rights; he may have named these individuals only as litigation opponents with respect to the *habeas corpus* relief that he seeks. *See infra* at 15-17. The Court therefore dismisses Plaintiff's claims under Section 1983 against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(ii).

### G.    *Habeas corpus* relief

To the extent that Plaintiff challenges his current institutionalization at Mid-Hudson following the adjudication in his state court criminal proceedings that he was not responsible for a criminal offense by reason of mental disease or defect, under Section 330.20, the Court construes such claims for relief as seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) ("federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment"); *Francis S. v. Stone*, 221 F.3d 100, 108 n.10 (2d Cir. 2000) (noting that Section 2254 relief "applies to 'any claim that was adjudicated on the merits in State court proceedings,' and we do not believe that it

may be applied less deferentially to an order recommitting an [Section 330.20] defendant than to judgments of conviction" (citing § 2254(d))), *abrogated on other grounds*, *Harrington v. Richter*, 562 U.S. 86 (2011); *Riley v. OMH Comm'r of New York State Office of Mental Health*, No. 24-CV-1663 (RER), 2025 WL 2653906, at *5-6 n.10 (E.D.N.Y. Sept. 16, 2025) (noting that, in a matter where the petitioner had been adjudicated not responsible, under Section 330.20, and was then civilly committed, that "[t]he Court has authority to review the legality of [the petitioner's] civil confinement under 28 U.S.C. § 2254"), *appeal pending*, No. 25-2556 (2d Cir.); *Sheridan v. Wack*, No. 1:92-CV-5178 (LBS), 1993 WL 78018, at *1 (S.D.N.Y. Mar. 16, 1993).

Before a litigant can seek Section 2254 *habeas corpus* relief, that statute requires a litigant to exhaust all of his available state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Francis S. v. Stone*, 995 F. Supp. 368, 377 (S.D.N.Y. 1998) (exhaustion requirement "applies with equal force to insanity acquittees held pursuant to . . . [Section] 330.20"), *aff'd*, 221 F.3d 100 (2d Cir. 2000), *abrogated on other grounds*, *Richter*, 562 U.S. 86. This exhaustion requirement means that the state courts must be given the first opportunity to review constitutional errors associated with a litigant's custody. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A litigant, including one found by a state court not responsible for a criminal offense, under Section 330.20, can satisfy the exhaustion requirement by fairly presenting his claims for Section 2254 *habeas corpus* relief through a state's established appellate review process. *Id.* at 845; *see Pagan v. Mid-Hudson Forensic Psych. Hosp.*, No. 1:23-CV-10050 (LTS), 2024 WL 182763, at *3 n.3 (S.D.N.Y. Jan. 16, 2024); *Baybrev v. Belfi*, No. 1:19-CV-11693 (LTS), 2022 WL 1304208, at *4 (S.D.N.Y. May 2, 2022); *Pollack v. Paterson*, 1:10-CV-6297 (JGK) (JLC), 2011 WL 710605, at *4 (S.D.N.Y. Mar. 1, 2011), *report & recommendation adopted*, 2011 WL 6747409 (S.D.N.Y. Dec. 23, 2011). "A [litigant] has 'fairly

presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim [s]he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982)).

Plaintiff has alleged no facts showing that, before bringing this action, he exhausted the available state-court remedies with regard to the state court judgment directing his institutionalization. The Court therefore dismisses Plaintiff's claims for Section 2254 *habeas corpus* relief without prejudice to his pursuing these claims in a separate Section 2254 civil action.[11]

**H.    Remaining claims under state law**

The Court understands Plaintiff's claims under state law as brought under the court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

---

[11] This is not the first time that the Court has informed Plaintiff that he could seek Section 2254 *habeas corpus* relief to challenge his current custody at Mid-Hudson following exhaustion of available state court remedies. *Pagan,* 2024 WL 182763, at *3. Under the gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a Section 2254 *habeas corpus* petitioner must obtain authorization from the appropriate Court of Appeals before filing a second or successive *habeas corpus* petition. *See* 28 U.S.C. § 2244(b)(3)(A). A petition is "second or successive" if a previous *habeas corpus* petition was decided on the merits. *See Graham v. Costello*, 299 F.3d 129, 132 (2d Cir. 2002). Because conversion of a submission into a Section 2254 *habeas corpus* petition may restrict a petitioner's future attempts to seek *habeas corpus* relief, district courts must normally give a *pro se* petitioner notice and an opportunity to withdraw his submission before a court recharacterizes it as a Section 2254 petition. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 282 (2d Cir. 2003). Here, however, giving Plaintiff notice and granting him an opportunity to withdraw is unnecessary because dismissal without prejudice does not trigger the AEDPA's restrictions on second or successive petitions. *See Slack v. McDaniel*, 529 U.S. 473, 489 (2000).

(footnote omitted). Having dismissed Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of Plaintiff's claims under state law that have not already been dismissed in this Order. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## I.      Leave to amend is denied

Federal district courts generally grant a *pro se* plaintiff an opportunity to file an amended complaint to cure the plaintiff's original complaint's defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint, including any claims for Section 2254 *habeas corpus* relief against Ng and/or Dr. Orlando, as such an amendment would be futile.

## J.      Plaintiff's competency

Because Plaintiff is currently institutionalized following being found by a state court as not responsible for a criminal offense, under Section 330.20, this Court addresses whether, due to his mental-competency status, Plaintiff has the ability to bring this civil action *pro se*. "A[n] . . . incompetent person normally lacks the capacity to bring suit for himself." *Berrios v N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). Thus, usually, under Rule 17(c)(2) of the Federal Rules of Civil Procedure, "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] . . . incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). The Court is not permitted to make a merits determination in a civil action brought by an incompetent person, including a determination that such a person has failed to state a claim on

which relief may be granted, when that person is not represented by a guardian ad litem and legal counsel. *See Berrios*, 564 F.3d at 134-35. Yet, "[g]enerally, Rule 17(c) does not require a district court to make a sua sponte determination of competency whenever a question exists regarding a plaintiff's mental competence; instead, the duty to appoint a guardian ad litem is triggered by 'actual documentation or testimony' of the pro se litigant's mental incompetency." *Lewis v. Newburgh Hous. Auth.*, 692 F. App'x 673, 674 (2d Cir. 2017) (summary order) (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 n.4 (2d Cir. 2003)). Indeed, "absent actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency, the district court is not required to undertake an inquiry into a pro se litigant's mental capacity." *Ferrelli*, 323 F.3d at 201 n.4.

This Court does not have before it "actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency" attesting to Plaintiff's incompetency to bring this civil action *pro se*. *Id.* Thus, this Court will not undertake an inquiry as to Plaintiff's competency. In an abundance of caution, however, and because the Court has dismissed some of Plaintiff's claims discussed above for failure to state a claim on which relief may be granted, *supra* at 9, 13-15, the Court makes clear that it dismisses those claims *sua sponte without prejudice*, *see Berrios*, 564 F.3d at 135 (permitting a district court to dismiss an incompetent's claim without prejudice if it is "clear that no substantial claim could be asserted").

## CONCLUSION

The Court dismisses this action for the reasons set forth in this Order. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (ii), (iii); Fed. R. Civ. P. 12(h)(3). The Court dismisses any claims for *habeas corpus* relief without prejudice.

The Court makes clear that any claims that it has dismissed in this action for failure to state a claim on which relief may be granted are dismissed *sua sponte without prejudice*.

19

Because Plaintiff makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a civil judgment dismissing this action for the reasons set forth in this Order.

SO ORDERED.

Dated:    December 22, 2025
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge